**Roy REDDICK, Reddick Farms, Inc., Roy Reddick, Resident Agent, Appellants–Defendants,**

v.

**Kent CARFIELD, Keith Carfield, Alyn Leisure, Appellees–Plaintiffs.**

No. 70A01–9501–CV–6.

Court of Appeals of Indiana.

Oct. 19, 1995.

Rehearing Denied Feb. 26, 1996.

Ronald L. Wilson, Badell & Wilson, Rushville, for appellants.

William B. Keaton, Keaton & Keaton, P.C., Rushville, for appellees.

## OPINION

BAKER, Judge.

Appellants-defendants Roy Reddick, Reddick Farms, Inc., Roy Reddick, Resident Agent (collectively Reddick) appeal the judgment entered in favor of appellees-plaintiffs Kent Carfield, Keith Carfield and Alyn Leisure (collectively Carfield) in Carfield's action for breach of contract, fraud and conversion.

### FACTS

Reddick owns farmland located in Rush County, Indiana. In 1986, Reddick and Carfield entered into an oral farm crop share rental agreement. This agreement provided that Carfield would provide all of the labor and equipment needed to farm the land and that each party would pay for one-half of the cost of the seed, fertilizer and chemicals used in farming the land. The agreement further provided that the parties would share equally in any income generated from farming the land. At the end of 1986, Carfield and Reddick entered into a second oral farm crop share rental agreement for the 1987 crop year which contained the same terms as the 1986 agreement.

In 1986 and 1987, Reddick also entered into contracts with the Agricultural Stabilization and Conservation Service and the Commodity Credit Corporation of the U.S. Department of Agriculture (ASCS/CCC) to participate in the Price Support and Production Adjustment Program (Farm Program) for the 1986 and 1987 crop years. Pursuant to the Farm Program, Reddick received $122,594.95 from the ASCS/CCC as payment for crop deficiencies and/or for price supports for the 1986 and 1987 crop years. Although the Farm Program required that Reddick give his tenants and sharecroppers the opportunity to participate in the Farm Program and share in the payments therefrom, Reddick failed to do so.

In the fall of 1987, Carfield learned that Reddick had failed to give him the opportunity to either participate in the Farm Program or share in the $122,594.95 of Farm Program payments for the 1986 and 1987 crop years. As a result, Carfield confronted Reddick and demanded his share of the Farm Program payments pursuant to their 1986 and 1987 agreements which provided that Reddick and Carfield would share equally in any income generated from farming the land. When Reddick refused to pay him, Carfield complained to the ASCS/CCC. Thereafter, the ASCS/CCC determined that Reddick had failed to offer Carfield the opportunity to participate in the Farm Program and that Carfield was entitled to his pro rata share of the Farm Program payments. When Reddick refused to pay Carfield his pro rata share of the Farm Program payments, the ASCS/CCC deemed Reddick ineligible to participate in the Farm Program for the 1986 and 1987 crop years and ordered him to repay the Farm Program payments for those years. Although Reddick repaid $21,832 to the ASCS/CCC through set-off provisions, Reddick never fully reimbursed the ASCS/CCC.

On February 25, 1988, Carfield sent Reddick a notice indicating that he would be farming Reddick's land for the 1988 crop year pursuant to the same terms that were contained in their 1986 and 1987 agreements. R. at 20–21. In response, on February 29, 1988, Reddick filed a complaint against Carfield seeking to enjoin Carfield from farming his land during the 1988 crop year and seeking a declaratory judgment that the parties had not entered into a landlord-tenant relationship for that year. R. at 18–19. Thereafter, on May 11, 1988, Carfield filed a counterclaim alleging breach of contract. R. at 23–24. Specifically, Carfield argued that Reddick failed to notify Carfield that he intended to terminate their landlord-tenant relationship for the 1988 crop year. In response, Reddick filed a motion for summary judgment which the trial court granted on October 25, 1989. R. at 26. In granting Reddick's motion, the trial court found that Reddick only agreed to rent his land to Carfield for a specified period of time, specifical-

ly the 1987 crop year, and thus, he was not required to give notice that he was terminating their landlord-tenant relationship for the following year. Carfield did not appeal the trial court's decision. R. at 26.

On September 9, 1991, Carfield filed a complaint against Reddick alleging breach of contract, fraud and conversion. R. at 4–9. Specifically, Carfield alleged that Reddick breached their 1986 and 1987 agreements, which provided that Reddick and Carfield would share equally in any income generated from farming the land, when he failed to pay Carfield his pro rata share of the Farm Program payments for the 1986 and 1987 crop years. Carfield further alleged that Reddick's failure to pay him his pro rata share of the Farm Program payments constituted conversion and fraud. On November 4, 1991, Reddick filed a motion to dismiss asserting that Carfield's complaint was a compulsory counterclaim to Reddick's prior action for injunctive and declaratory relief, and thus, Carfield was required to bring his complaint in the prior action. R. at 16–17. Reddick further alleged that Carfield's action was barred by laches and the doctrine of res judicata. R. at 16–17. On that same day, Reddick also filed a counterclaim against Carfield alleging abuse of process. R. at 32–33. Thereafter, on August 17, 1992, Reddick moved for summary judgment. In his motion, Reddick maintained that because the ASCS/CCC determined that he was ineligible to participate in the Farm Program for the 1986 and 1987 crop years, Carfield was similarly ineligible to participate and receive the Farm Program payments for those years. R. at 106–09. On February 3, 1993, the trial court entered an order denying Reddick's motion for summary judgment and finding that Carfield's present action would have been a permissive counterclaim to Reddick's earlier action. Therefore, because Carfield

was not required to bring his claim in the prior action, it was properly before the court.

On September 14, 1994, after a bench trial, the trial court dismissed Reddick's counterclaim for abuse of process and, pursuant to Reddick's request, entered special findings of fact and conclusions of law. Specifically, the trial court found that Reddick breached the parties' 1986 and 1987 agreements by failing to give Carfield his pro rata share of the $122,594.95 in Farm program payments. The trial court further found that Reddick knowingly and intentionally exerted unauthorized control over Carfield's share of the Farm Program payments pursuant to IND. CODE § 35–43–4–3,[1] and thus, it awarded Kent and Keith Carfield $42,305.88 and Alyn Leisure $22,574.62 in damages pursuant to IND.CODE § 34–4–30–1.[2]

## DISCUSSION AND DECISION

### I. Standard of Review

■ When a trial court enters specific findings of fact and conclusions of law pursuant to Ind.Trial Rule 52(A), we must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Bd. of Com'rs v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second whether the findings support the judgment. *Id.* A judgment will be reversed only if clearly erroneous. *Id.*

### II. Counterclaim

■ Reddick contends that Carfield's complaint was a compulsory counterclaim to Reddick's earlier action for injunctive and declaratory relief, thus barring its prosecution.[3] Compulsory counterclaims are defined

---

1. I.C. § 35–43–4–3 provides that a person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor. The parties do not challenge whether conversion was the appropriate remedy in this case.

2. I.C. § 34–4–30–1 allows a plaintiff, who has suffered a pecuniary loss as a result of a violation

of I.C. § 35–43–4–3, to sue for treble damages, reasonable attorney fees and certain other costs.

3. Reddick also contends that Carfield's present action is barred by the doctrine of res judicata. The doctrine of res judicata consists of two concepts, claim preclusion and issue preclusion. Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same

by Ind.Trial Rule 13(A) which in relevant part provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Thus, a claim is barred, pursuant to T.R. 13(A), if it is not asserted in the initial action and it arose out of the same transaction or occurrence which is the subject of the initial claim. We have held that the phrase "transaction or occurrence" is to be broadly defined so as to effectuate the rule's intended purpose of avoiding multiple lawsuits between the same parties arising from the same event or events. *Broadhurst v. Moenning* (1994), Ind.App., 633 N.E.2d 326, 331, citing *Estate of McCullough* (1986), Ind.App., 492 N.E.2d 1093, 1096, *trans. denied.* Consequently, our courts have adopted the position that two causes of action arise from the same transaction or occurrence when there is a logical relationship between them. *Id.* A logical relationship exists when the counterclaim arises from the same "aggregate of operative facts" as the opposing party's claim. *Broadhurst*, 633 N.E.2d at 331. Therefore, we must determine whether the breach of contract, fraud and conversion claims asserted in Carfield's complaint arose out of the same transaction or occurrence which was the subject matter of Reddick's previous action for injunctive and declaratory relief.

In his earlier action, Reddick requested an injunction to prohibit Carfield from farming his land for the 1988 crop year and sought a declaratory judgment that the parties had not entered into a landlord-tenant relationship for the 1988 crop year. In essence, Reddick maintained that the 1986 and 1987 agreements were term-for-years contracts; thus, he was not required to notify Carfield that he would not be entering into a third contract for the 1988 crop year. In response, Carfield filed a breach of contract counterclaim arguing that Reddick was required to notify Carfield that he intended to terminate their landlord-tenant relationship for the 1988 crop year. Thereafter, the trial court granted Reddick's motion for summary judgment and held that Reddick only agreed to rent his land to Carfield for a specified period of time, namely the 1987 crop year, and therefore, he was not required to give notice that he was terminating their landlord-tenant relationship for the following year. Hence, Reddick's earlier action focused upon whether the parties had a valid agreement for the 1988 crop year.

■ In contrast, Carfield filed the present breach of contract, fraud and conversion action in an attempt to recover his pro rata share of the Farm Program payments for the 1986 and 1987 crop years. Specifically, Carfield argued that the parties' 1986 and 1987 agreements provided that Reddick and Carfield would share equally in any income generated from farming the land, which Carfield maintained included the Farm Program payments for the 1986 and 1987 crop years. Thus, the present action focused upon whether Carfield was entitled to his pro rata share of the Farm Program payments, pursuant to the parties' 1986 and 1987 agreements, for those respective crop years. We cannot say that Reddick's previous action, which involved a dispute regarding whether the parties had a valid contract for the 1988 crop year, arose from the same aggregate of operative facts that formed the basis of Carfield's action to recover his pro rata share of the Farm Program payments, pursuant to the

---

claim between those parties and their privies. *Kieler v. C.A.T. by Trammel* (1993), Ind.App., 616 N.E.2d 34, 36, *trans. denied.* Issue preclusion bars the subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. *Id.* Here, the claims and issues involved in Carfield's present action, specifically whether Carfield is entitled to his pro rata share of the Farm Pro-

gram payments pursuant to the parties' agreements for the 1986 and 1987 crop years, are not the same claims and issues that comprised Reddick's earlier action in which Reddick sought to enjoin Carfield from farming his land during the 1988 crop year and sought a declaratory judgment that the parties' landlord-tenant relationship had been terminated for that year. Thus, the doctrine of res judicata is inapplicable to this case.

parties' 1986 and 1987 agreements. Thus, we hold that the evidence supports the trial court's finding that Carfield's present action was not a compulsory counterclaim to Reddick's suit for declaratory and injunctive relief.[4]

### III.  Abuse of Process

Next, Reddick asserts that the trial court erred in dismissing his counterclaim for abuse of process.  In essence, Reddick's counterclaim alleged that Carfield committed abuse of process by filing an action that Reddick maintained was a compulsory counterclaim to his earlier action.  A party asserting abuse of process must show an ulterior motive and use of process that would not be proper in the normal prosecution of the case.  *Holland v. Miami Systems, Inc.* (1993), Ind.App., 624 N.E.2d 478, 483.  As we determined above, Carfield's present action was not a compulsory counterclaim to Reddick's earlier action and thus, it was not an improper use of process in the normal prosecution of the case.  Furthermore, Reddick does not assert that Carfield acted with an ulterior motive in filing the instant action.  Hence, Reddick failed to present evidence to support his claim of abuse of process and the trial court properly dismissed his counterclaim.

### IV.  Summary Judgment

Next, Reddick asserts that the trial court erred in denying his motion for summary judgment.  Specifically, Reddick contends that since the ASCS/CCC concluded that he was ineligible to participate in the Farm Program for the 1986 and 1987 crop years and ordered him to repay the $122,594.95 in Farm Program payments, Carfield was similarly ineligible to participate in and receive the Farm Program payments for those years.

In reviewing a ruling on a motion for summary judgment, this court applies the same standard applied by the trial court. *Walling v. Appel Service Co.* (1994), Ind. App., 641 N.E.2d 647, 648–49.  Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Ind.Trial Rule 56(c).  The burden is on the moving party to prove that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.  *Oelling v. Rao* (1992), Ind. 593 N.E.2d 189, 190.  All facts and inferences from the designated evidentiary matter must be construed in favor of the non-moving party.  *Walling,* 641 N.E.2d at 649.

Here, Reddick received Farm Program payments during the 1986 and 1987 crop years.  Although Reddick was later deemed ineligible to participate in the Farm Program, he has retained $100,762.95 in Farm Program payments.  Thus, at the time the court ruled on Reddick's motion for summary judgment, a genuine issue of material fact existed regarding whether Carfield was entitled to a share of the Farm Program payments based upon the parties' 1986 and 1987 agreements which provided that Reddick and Carfield would share equally in any income generated from farming the land.  In other words, a question remained as to whether the provision for sharing equally in all income was intended to include any money received from the Farm Program.  As a result, the trial court did not err in denying Reddick's motion for summary judgment.

### V.  CONCLUSION

The trial court properly denied Reddick's motion to dismiss as well as Reddick's counterclaim for abuse of process where Carfield's present action was merely a permis-

---

4.  Reddick contends that the trial court erred in denying his motion to admit three exhibits into evidence.  Specifically, Reddick asserts that the exhibits were relevant to support his contention that Carfield's present action was barred by the doctrine of res judicata in that it was a compulsory counterclaim to Reddick's earlier action for injunctive and declaratory relief.  Those exhibits were:  1) Reddick's 1988 complaint for injunctive and declaratory relief, 2) Carfield's answer and counterclaim to Reddick's complaint, and 3) the trial court's judgment granting Reddick's motion for summary judgment.  However, these exhibits were attached to Reddick's motion to dismiss and were, therefore, before the trial court when it determined that Carfield's present action would have been a permissive counterclaim to Reddick's earlier action.

sive counterclaim to Reddick's earlier action and, thus, was not required to be brought as a part of that suit. Further, the trial court properly denied Reddick's motion for summary judgment because a genuine issue of material fact existed regarding whether Carfield was entitled to a pro rata share of the Farm Program payments for the 1986 and 1987 crop years.

Judgment affirmed.

NAJAM, J., and SHARPNACK, C.J., concur.