BACOMPT SYSTEMS, INC.,
Appellant–Defendant,

v.

Paul S. ASHWORTH, Appellee–
Plaintiff.

No. 29A02–0009–CV–565.

Court of Appeals of Indiana.

July 20, 2001.

Craig Pinkus, Sydney L. Steele, Steven L. Jones, Lowe, Gray, Steele & Darko, LLP, Indianapolis, IN, Attorneys for Appellant.

Richard R. Skiles, Janet M. Prather, Skiles, Hansen, Cook & DeTrude, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Bacompt Systems, Inc., appeals the trial court's entry of summary judgment in favor of Paul Ashworth. Bacompt raises six issues on appeal, which we consolidate and restate as:

I. Whether the trial court erred in granting summary judgment in favor of Ashworth regarding Bacompt's counterclaims; and

II. Whether the trial court erred in its award of attorney fees to Ashworth.

We affirm.

### Facts and Procedural History

The facts most favorable to the non-movant reveal that Ashworth was one of the original employees of Bacompt Systems, Inc., a closely-held corporation. By mid–1994, Ashworth was also a director, officer, and minority shareholder of Bacompt. At all times pertinent, Ashworth was bound by an employee confidentiality and non-compete agreement.

In or around July of 1994, Buddy Stanley, acting on behalf of Bacompt as its president and chief executive officer, entered into negotiations with representatives of CopyRite, Inc., regarding CopyRite's acquisition of Bacompt. At Stanley's request, Ashworth agreed not to communicate with CopyRite about its potential purchase of Bacompt without Stanley's knowledge and consent. The last contact Stanley had with CopyRite

was at a meeting on September 8, 1994. Sometime thereafter, Ashworth contacted CopyRite and expressed interest in employment with their corporation. CopyRite hired Ashworth, and in December of 1994, he resigned from Bacompt to begin working for CopyRite.

On December 31, 1993, prior to the facts at issue, Bacompt borrowed nearly $45,000 from Ashworth. The promissory note provided that Bacompt would repay Ashworth the principal plus interest "on or before the 31st day of December, 1996." R. at 16. Bacompt made several interest payments totaling $4148.88, prior to March of 1995. In late April of 1995, Bacompt issued a letter through its attorney notifying Ashworth that it would "regard the loan balance owed Paul [Ashworth] as a set-off against the damages incurred to date," and that "[n]o further interest or principal payments" would be made. R. at 89. As of the December 1996 due date, the entire principal plus additional accrued interest remained unpaid.

On April 1, 1997, Ashworth filed a cause of action against Bacompt seeking payment of the promissory note plus attorney fees. On May 27, 1997, Bacompt filed its answer, affirmative defenses and counterclaims against Ashworth. In its counterclaims, Bacompt alleged (1) that Ashworth breached his fiduciary duty to Bacompt by undermining the sale negotiations with CopyRite when he contacted CopyRite seeking employment, and (2) that he committed corporate waste.[1] With respect to the promissory note, the trial court granted summary judgment without opinion in favor of Ashworth on October 1, 1998. Ashworth filed a motion for summary judg-

ment on Bacompt's counterclaims, which was likewise granted without opinion in favor of Ashworth on October 27, 1999.

On March 9, 2000, the trial court conducted a hearing to determine damages and attorney fees arising from nonpayment of the promissory note. Ashworth also requested attorney fees incurred as a result of defending against Bacompt's counterclaims. On May 3, 2000, the trial court issued findings of fact and conclusions of law with regard to Ashworth's request for damages. The trial court awarded Ashworth $62,511.44 in principal and interest and $10,210.84 in attorney fees with regard to the promissory note. In addition, because the trial court found Bacompt's counterclaims to be groundless and time-barred, it awarded Ashworth $16,302.20 for attorney fees incurred between June 9, 1999, and December 6, 1999, that were attributable to defending against Bacompt's counterclaims.

In early June of 2000, the trial court heard Bacompt's motion for sanctions. In its findings and conclusions issued shortly thereafter, the trial court ruled in favor of Bacompt and ordered that the appropriate remedy would be to allow Bacompt to reopen the issue of Ashworth's attorney fees. In accordance with its ruling, on July 7, 2000, the trial court heard additional evidence pertaining to Ashworth's request for attorney fees and also heard evidence on Bacompt's motion to correct error. On July 25, 2000, the trial court issued an order affirming its previous findings and conclusions issued on May 3, 2000, and denying Bacompt's motion to correct error.

---

1. On appeal, Bacompt alleges a breach of fiduciary duty when Ashworth recruited a former Bacompt employee, Scott Steele, to work for CopyRite in December of 1994. Because Bacompt failed to even mention this claim in its counterclaim, let alone set forth the operative facts involved in the litigation, we find this issue waived. *City of Anderson v. Weatherford,* 714 N.E.2d 181, 185 (Ind.Ct.App. 1999); *see also* Ind.Trial Rule 8(A).

It is from this ruling that Bacompt now appeals.

## I. Summary Judgment

Bacompt contends that the trial court erred in granting summary judgment in favor of Ashworth as to Bacompt's counterclaims. In reviewing a grant of summary judgment, we stand in the shoes of the trial court, utilizing the same standards and resolving any questions of fact or inferences drawn therefrom in favor of the non-moving party. *Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 936 (Ind.Ct.App. 1996). Summary judgment should be granted when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The trial court's grant of summary judgment will be affirmed if it is sustainable on any theory found in the evidence designated to the trial court. *Bamberger*, 665 N.E.2d at 936.

The trial court did not enter findings and conclusions with its order granting summary judgment in Ashworth's favor as to Bacompt's counterclaims. However, the trial court included its reasons for granting summary judgment in its May 3, 2000, findings and conclusions entered subsequent to Ashworth's request for attorney fees. The pertinent portion of the trial court's conclusion of law number eight states that:

> Although pursuing the counterclaim after June 2, 1999, was probably unreasonable, the Court need not reach that issue because Defendant's claim was groundless. First, the statute of limita-

tions had run on Defendant's counterclaim. Second, even if the statute of limitations had not run, there were no facts which supported Defendant's claim that Plaintiff breached his fiduciary duties.

R. at 536.

■ Bacompt asserts that the trial court erred in granting summary judgment in favor of Ashworth on the basis that Bacompt's counterclaims were time-barred. Specifically, Bacompt claims that the balance owed on the promissory note is a proper set-off to the amount of damages Ashworth caused by breaching his fiduciary duty. We disagree.

Until 1969, the authority to assert a set-off in Indiana courts was derived from statute, and limited to actions arising from an "independent contract, express or implied." [2] When the statutes pertaining to set-off were repealed in 1970, the "declared intention" of the 1970 Civil Code Study Commission was to incorporate the doctrine of set-off and its history into the newly drafted Indiana Trial Rules. *See* 1A William F. Harvey, *Indiana Practice* § 13.16. The result of the Commission's effort was Indiana Trial Rule 13, whereby a set-off could be pleaded in the form of a counterclaim. However, despite this "declared intention," what constitutes a "set-off" and how it fits within modern trial procedure are questions with cloudy answers. *Id.*

■ Trial Rule 13 does not mention the concept of set-off by that term. Trial Rule 13 instead distinguishes between two types of counterclaims that may be asserted in a cause of action. Counterclaims are either

2. *See* Burns' Ann. St. § 2–1016; *Teeters v. City Nat. Bank of Auburn*, 214 Ind. 498, 501–02, 14 N.E.2d 1004, 1005 (1938)(defining "set-off" as: the right that exists between two persons, *each of whom under an independent*

*contract, express or implied, owes an ascertained amount to the other,* to set off their mutual debt by way of deduction)(emphasis added).

compulsory (required to be made) or permissive (at the option of the defendant or the court). *Rees v. Panhandle Eastern Pipe Line Co.,* 452 N.E.2d 405, 408 (Ind. Ct.App.1983). The compulsory counterclaim is further described in subsection (A) of T.R. 13, which provides in pertinent part:

A pleading shall state as a counterclaim any claim, which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Ind.T.R. 13(A)(emphasis added). The permissive counterclaim is further described in subsection (B) as: "any claim against an opposing party *not* arising out of the transaction or occurrence that is the subject-matter of the opposing party's claim." Ind.T.R. 13(B)(emphasis added). Like its federal counterpart, Indiana Trial Rule 13(B) is presently the avenue through which defensive claims denominated as set-offs are asserted.

Indiana Trial Rule 13(J)(1) provides that a counterclaim, otherwise barred by a statute of limitations, may be asserted when "it diminishes or defeats the opposing party's claim if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim, or if it could have been asserted as a counterclaim to the opposing party's claim before it (the counterclaim) was barred." Ind. T.R. 13(J)(1). The first type of counterclaim described in 13(J)(1) is clearly a compulsory counterclaim. It follows then that the second type of counterclaim described would be any permissive counterclaim, including a set-off, that was a viable claim against the opposing party but which does not arise out of the same transaction or occurrence which is the subject of the opponent's complaint.

Bacompt insists that its counterclaims arise out of the same operative facts as Ashworth's claim for payment of the promissory note. Bacompt offers *Reddick v. Carfield,* 656 N.E.2d 518 (Ind.Ct.App. 1995), in support of its contention. In *Reddick,* this court stated:

We have held that the phrase "transaction or occurrence" is to be broadly defined so as to effectuate the rule's intended purpose of avoiding multiple lawsuits between the same parties arising from the same event or events. Consequently, our courts have adopted the position that two causes of action arise from the same transaction or occurrence when there is a logical relationship between them. A logical relationship exists when the counterclaim arises from the same "aggregate of operative facts" as the opposing party's claim.

*Id.* at 522 (internal citations omitted). Bacompt explains that the "logical relationship" in this case is that Bacompt "withheld payment to Ashworth on the promissory note *because* Ashworth breached his fiduciary duty to Bacompt in October and November of 1994." Appellant's Brief at 22 (emphasis in the original).

We find Bacompt's argument without merit. It is readily apparent that the only relationship between Ashworth's claim and Bacompt's counterclaims is that Bacompt unilaterally decided to use the amount owed on the note as a set-off to the alleged damages suffered as a result of Ashworth's alleged breach of fiduciary duty. Since a set-off is a form of permissive counterclaim, by its very definition it does not arise out of the same operative facts as the opponent's complaint. Bacompt is there-

fore limited to reliance upon the Trial Rule 13(J)(1) language governing the second type of counterclaim, which applies to permissive counterclaims that "could have been asserted as a counterclaim to the opposing party's claim before it (the counterclaim) was barred." Ind. T.R. 13(J)(1).

■ In Indiana, the cause of action for breach of fiduciary duty asserted by Bacompt is considered a tort claim for injury to personal property. *Mack v. American Fletcher Nat. Bank & Trust Co.*, 510 N.E.2d 725, 738–39 (Ind.Ct.App.1987). Accordingly, the applicable statute of limitations is two years. *Id.;* Ind.Code § 34–11–2–4(2)(1998). Bacompt's counterclaims accrued in December of 1994, when Ashworth resigned his position. However, Ashworth's claim did not accrue until after December 31, 1996, the due date of the promissory note. Bacompt filed its counterclaims in May of 1997, approximately two and a half years after Ashworth resigned from Bacompt to begin working with CopyRite. Thus, because the two-year limitation had run on Bacompt's claim against Ashworth by the time Ashworth's claim accrued, Bacompt never had a viable counterclaim to assert against Ashworth's claim. As a result, Bacompt's time-barred counterclaims cannot be saved by 13(J)(1).

Moreover, we agree with the trial court that Bacompt's counterclaims are groundless. Bacompt asserts that Ashworth breached his fiduciary duty by undermining its potential sale to CopyRite. In order to show that it was entitled to relief, Bacompt was obligated to present some issue of material fact that Ashworth committed the breach.

The parties do not dispute that Ashworth, until the time of his resignation from Bacompt in December of 1994, owed a fiduciary duty to Bacompt. However, Bacompt's designated facts merely establish that Ashworth was instructed not to discuss the potential purchase of Bacompt with any representative of CopyRite, and that, after a period of time, Ashworth approached CopyRite for a job. Ashworth then resigned from Bacompt in December of 1994.

There is no indication in the designated facts that Ashworth entered into and/or frustrated sales negotiations. In fact, the only evidence Bacompt proffered in support of its claim that negotiations were ongoing at the time Ashworth contacted CopyRite is Stanley's third affidavit stating that "at the close of the September 8 meeting, Mr. Stanley understood that the new information would be considered and that Mr. King would get back to him on the subject of acquiring Bacompt." R. at 364. Bacompt asserts that it sustained damage as a result of Ashworth's alleged breach, but these claims are likewise unsubstantiated. We find the evidence completely insufficient to even raise a genuine issue of material fact concerning Bacompt's counterclaim of breach of fiduciary duty.

Second, Bacompt asserts as a counterclaim that Ashworth breached his fiduciary duty by committing corporate waste and that the trial court erred by granting summary judgment in favor of Ashworth regarding this claim. Bacompt argues that, because Ashworth made no effort to negate the allegation of corporate waste, the allegation must be taken as true by the trial court. Even if the allegation is true, Bacompt still must show how its assertion that Ashworth used "$10,000 of corporate funds to pay postage expenses that should have been billed to a customer," and ordered "certain pre-laminate stock for $20,000 for work not ordered or authorized by Bacompt's customer" constitutes corporate waste. R. at 66. As with Bacompt's counterclaim for breach of fiduciary duty, we find Bacompt's conclusory assertion of

corporate waste too vague to withstand Ashworth's motion for summary judgment.

## II. Attorney Fees

 Bacompt also argues that the trial court erred in awarding attorney fees to Ashworth on the basis that Bacompt's counterclaims were "groundless." Indiana Code section 34–52–1–1(b)(2) provides:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> . . . .
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless.

We review the trial court's decision to award attorney fees under an abuse of discretion standard. *Emergency Physicians of Indianapolis v. Pettit*, 714 N.E.2d 1111, 1115 (Ind.Ct.App.1999).

 The trial court entered findings of fact and conclusions of law pursuant to Trial Rule 52(A). In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Crowley v. Crowley*, 708 N.E.2d 42, 54 (Ind.Ct.App.1999)(citing *Breeden v. Breeden*, 678 N.E.2d 423, 425 (Ind.Ct.App. 1997)). The judgment will be reversed only when clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences to support them. *Id.*

 The trial court based its award of attorney fees on its conclusion that Bacompt's counterclaims were groundless. A counterclaim is "groundless" if no facts exist that support the legal claim relied on and presented by the losing party. *Garza v. Lorch*, 705 N.E.2d 468, 475 n. 10 (Ind. Ct.App.1998). In support of its determination that the counterclaims were ground-

less, the trial court concluded that: (1) the statute of limitations had run on Bacompt's counterclaims, and (2) Bacompt presented no facts in support of its claim that Ashworth breached his fiduciary duty.

We have already analyzed and affirmed the trial court's ruling on the motion for summary judgment based on the same conclusions that the counterclaims were time-barred and Bacompt presented no facts to support its claims. Therefore, we agree with the trial court that Bacompt's counterclaims were groundless in addition to the trial court's findings that:

> 8. Plaintiff placed Defendant on notice that Defendant's counterclaim was groundless and unreasonable on June 2, 1999; and
>
> . . . .
>
> 12. Between June 2, 1999, and December 6, 1999, Plaintiff incurred attorney's fees in the amount of $16,302.20 defending against Defendant's counterclaim.

R. at 534. Accordingly, we find no abuse of discretion regarding the trial court's award of attorney fees to Ashworth in the amount of $16,302.20.

Bacompt argues further that the trial court erred in denying Bacompt's request for attorney fees pursuant to Indiana Trial Rule 37(B)(2). Bacompt contends that, because the trial court ruled that Ashworth neglected to make a reasonably diligent effort to comply with Bacompt's discovery request for attorney time records, Bacompt should have been awarded the attorney fees it incurred in bringing its motion for sanctions. We disagree.

We review a trial court's decision on whether to award attorney fees pursuant to Trial Rule 37 on an abuse of discretion standard. *Walker v. McCrea*, 725 N.E.2d 526, 532 (Ind.Ct.App.2000). Trial Rule 37(B)(2) states in relevant part:

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Bacompt filed its motion for sanctions as a result of Ashworth's failure to produce copies of all time records used by Ashworth's attorneys to calculate their attorney fees for the time period between June 2, 1999, and December 6, 1999. In its findings and conclusions regarding the hearing on the motion for sanctions, the trial court stated:

6. The Court finds that Plaintiff's counsel had custody, control, and possession of some of the time records used to calculate the bills identified in Request No. 1. Specifically, the Court finds that Plaintiff's counsel has possession of Ms. Prather's time records.

7. The Court finds that Plaintiff had a duty to make a reasonably diligent effort to locate and produce the requested time sheets.

8. The Court finds that Plaintiff breached its duty when it failed to supplement its response to Defendant's request No. 2.

9. Accordingly, the Court finds that Plaintiff's counsel committed under-standable negligence when it failed to supplement its response to Defendant's request No. 2.[3]

10. The Court finds that Defendant was prejudiced by Plaintiff's under-standable negligence. Accordingly, the Court finds that, pursuant to T.R. 37, sanctions are appropriate.

11. The Court finds that the just remedy in regard to Plaintiff's failure to supplement its response is to allow Defendant to re-open evidence on the issue of Plaintiff's reasonable attorney's fees incurred defending against Defendant's counterclaim between June 2, 1999, and December 6, 1999, which issue was previously heard on April 9, 2000.

R. at 647–48.

The trial court characterized Ashworth's failure to comply as "understandable negligence," and determined that the "just remedy" would be to re-open the case in lieu of awarding attorney fees to Bacompt. It is clear from this reasoning, as well as the language used, that the trial court considered Ashworth's failure to comply with Bacompt's discovery request "substantially justified" and elected to remedy the error by allowing Bacompt a second chance to present its case.[4] Ind.T.R. 37(B)(2). For these reasons, we find no abuse of discretion in the trial court's decision not to award attorney fees to Bacompt.

### Conclusion

We affirm the trial court's grant of summary judgment on Bacompt's counter-

---

**3.** The trial court stated further in a footnote that: "The Court recognizes that Plaintiff's counsel was in the process of moving to a new office space at the time the Defendant requested the records in question. Further, the court recognizes that Defendant did not at any time make a follow up inquiry regarding the time records in question and that any prejudice could have been prevented had Defendant requested a continuance. However, none was requested." R. at 648.

**4.** The trial court heard further testimony on the re-opened issue of Ashworth's attorney fees on July 7, 2000, along with Bacompt's motion to correct error. On July 25th, the trial court issued an order denying the motion to correct error and affirming its original May 3rd findings and conclusions regarding attorney fees. R. at 738–39.

claims in favor of Ashworth. Because we agree with the trial court that Bacompt's counterclaims were groundless, we also affirm the trial court's award of attorney fees incurred between June 2, 1999, and December 6, 1999, to Ashworth for defending against Bacompt's counterclaims. We find no abuse of discretion in the trial court's decision not to award attorney fees to Bacompt for its motion for sanctions against Ashworth.

Affirmed.

SHARPNACK, C.J., and SULLIVAN, J., concur.