LIBERTY MORTGAGE
CORPORATION, INC.,
Appellant–Defendant,

v.

NATIONAL CITY BANK,
Appellee–Plaintiff.

No. 88A01–0103–CV–82.

Court of Appeals of Indiana.

Sept. 13, 2001.

Steven A. Gustafson, Fox & Cotner, New Albany, IN, Attorney for Appellant.

Garret B. Hannegan, Morgan & Pottinger, P.S.C., Louisville, KY, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Liberty Mortgage Corp., Inc. (Liberty) appeals from a judgment and decree of foreclosure, in which the trial court granted summary judgment in favor of National City Bank of Southern Indiana (National City). The following issue is dispositive of this appeal: Did the trial court err in not applying the doctrine of equitable subrogation?

We affirm.

On October 21, 1995, Steven and Teena Morris opened up a line of credit with National City and executed an Equity Reserve Agreement, in the amount of $35,000, with interest accruing at a variable rate. The equity reserve account was an open-ended line of credit from which

the Morrises could obtain cash advances for a period of ten years. In order to secure the repayment of any debt owed pursuant to the Equity Reserve Agreement, the Morrises executed and delivered to National City a form mortgage on their residence located at 6765 E. Motsinger Road in Pekin, Indiana.[1] The mortgage at issue was dated October 21, 1995 and recorded in the office of the Recorder of Washington County, Indiana on October 26, 1995. It stated that it was taken to secure payment of: "certain PROMISSORY ('NOTE(S)'), dated 10–21, 1995, in the sum of $35,000 ..., with terms of payment as therein provided, or as extended or renewed...." *Appendix* at 17. It further provided:

> The Mortgage shall also secure the payment of any other liabilities, joint, several, direct, indirect, or otherwise, of Mortgagors to the holder of this Mortgage, when evidenced by promissory notes or other evidence of indebtedness stating that said notes or other evidence of indebtedness are secured hereby.

*Id.*

Between October 21, 1995 and July 7, 1998, the Morrises borrowed against nearly all the credit available to them on the Equity Reserve Agreement with National City. On July 7, 1998, the Morrises also borrowed money from American Mortgage Corporation (American). They executed a promissory note in favor of American that was secured by a mortgage on their residence, located at 6765 E. Motsinger Road, in the principal amount of $124,000. The closing on the Morrises' mortgage with American was held on July 7, 1998 at The Title Company in New Albany, Indiana. The mortgage was assigned to Liberty on the day of the closing, and it was subse-

quently recorded in the office of the Recorder of Washington County.

Sometime prior to the time of the actual closing on the American mortgage, the closing agent at The Title Company contacted National City to obtain a payoff amount. On the day of the closing, National City sent a fax to The Title Company with regard to the amount the Morrises owed National City pursuant to the Equity Reserve Agreement executed on October 21, 1995. The fax stated in pertinent part:

> The following is the information you requested concerning the amount owed on
> Home Equity Reserve <u>4489 3087 2000 1956</u>

| Account Styled: | <u>Steve E Morris</u><br><u>Teena D Morris</u> |
|---|---|
| Balance On: | <u>7–7–98</u><br><u>$33,066.45</u> |

> The amount given does not include any purchases or finance charges that may be added to the account. The customer will receive a final statement. *A signed statement from the customer requesting the account to be closed is also required.*
>
> If I may be of any further assistance, please contact me.
>
> Sincerely,
>
> Customer Service
>
> Send to: NC Customer Service Loan Services
>
> ATTN: Equity Closeouts
> P.O. Box 5570
> Cleveland, OH 44101

*Appendix* at 90 (emphasis in italics supplied). The Title Company sent a check dated July 11, 1998 in the amount of $33,066.45 to National City. A notation on the front of the check stated, "RE: 6765 E. Motsinger Road", and a notation on the sheet attached to the check stated, "NCB

---

1. The Morrises also executed a note and mortgage in favor of National City on a piece of commercial real estate. The second piece of real estate is not pertinent to this appeal involving Liberty.

of KY Payoff". *Id.* at 91. After the $33.066.45 check was applied to the National City account and finance charges were applied, the statement sent to the Morrises for the Equity Reserve Agreement line of credit showed an outstanding balance due of $99.26.

Despite the italicized language contained in National City's fax to The Title Company and the notations referring to a payoff on the check and on the accompanying sheet sent by The Title Company to National City, neither The Title Company nor Liberty ever provided National City with a "signed statement from the [Morrises] requesting the account to be closed." *Appendix* at 90. National City did not close the equity line of credit, and the Morrises thereafter continued to make withdrawals against the line of credit available to them pursuant to the Equity Reserve Agreement. As of November 23, 1999, the Morrises' balance on the National City equity line of credit was $33,636.89.

The Morrises defaulted on the notes to both National City and Liberty and, at some point, filed bankruptcy. National City brought this action against the Morrises and American, seeking to have the mortgage securing the equity line of credit adjudged as a first lien on the property and to foreclose on that mortgage. Liberty, as the successor to American, defended and argued that its mortgage lien was not inferior to that of National City. Liberty also counterclaimed, arguing, among other things, (1) that its payment of the Morrises' debt to National City obliged National City to release its mortgage on the Morrises' property, (2) if National City continued to have a valid lien against the property, such lien was inferior to that of Liberty, and (3) Liberty should be equitably subrogated to National City's mortgage priority. National City filed a motion

for summary judgment, which the trial court granted.

In reviewing a grant of summary judgment, we stand in the shoes of the trial court, utilizing the same standards and resolving any questions of fact or inferences drawn therefrom in favor of the non-moving party. Summary judgment should be granted when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court's grant of summary judgment will be affirmed if it is sustainable on any theory found in the evidence designated to the trial court.

*Bacompt Systems, Inc. v. Ashworth,* 752 N.E.2d 140, 143 (Ind.Ct.App.2001) (citations omitted).

In *Osterman v. Baber,* 714 N.E.2d 735, 737–38 (Ind.Ct.App.1999), *trans. denied,* this court discussed the doctrine of equitable subrogation:

Equitable subrogation is applicable when a "party, not [acting as] a mere volunteer, pays the debt of another which, in good conscience, should have been paid by the one primarily liable." *Loving v. Ponderosa Sys., Inc.,* (1985) Ind., 479 N.E.2d 531, 536 (citing *National Mutual Ins. Co. v. Maryland Cas. Co.* (1963), 136 Ind.App. 35, 41, 187 N.E.2d 575, 578, *trans. denied* ). At that time, if equity permits, the party who has paid the creditor, or subrogee, becomes entitled to the legal rights and security originally held by the creditor. "Subrogation depends upon the equities and attending facts and circumstances of each case." *Ticor Title Ins. Co. v. Graham* (1991) Ind.App., 576 N.E.2d 1332, 1338, *trans. denied.* It is "a highly favored doctrine, which is to be given a liberal interpretation." 73 Am.Jur.2d *Subrogation §* 7 (1974) (citations omit-

ted). However, while ordinary negligence will not bar the application of subrogation, "[t]he remedy will not be allowed where the party is guilty of culpable negligence." *Ticor, supra* at 1338. Thus, a party who pays the debt of another may be substituted in place of the other if he was not acting (1) as a mere volunteer, and (2) with "culpable negligence."

■ Because there are no degrees of negligence under Indiana common law, it is difficult to place the term "culpable negligence" within an appropriate frame of reference. *Osterman v. Baber,* 714 N.E.2d at 738. Nonetheless, the term contemplates action or inaction that is more than mere inadvertence, mistake, or ignorance. *Id.;* 83 C.J.S. Subrogation § 6 (1953). In *Osterman,* this court found guidance from cases outside Indiana and noted that other jurisdictions imposed stricter standards on professionals in assessing whether mistakes are excusable for purposes of equitable subrogation, particularly when the professional relationship arises out of a commercial transaction involving consideration.

This court in *Osterman* also noted that there are no Indiana cases discussing whether a party may be subrogated to another's rights when there is actual knowledge of an intervening lien, but determined that it was appropriate to balance the subrogee's knowledge in deciding whether equitable subrogation was appropriate or whether culpable negligence prevented application of the doctrine. *Osterman v. Baber,* 714 N.E.2d 735. The court stated:

In applying the culpability factor to the facts of this case, we hold that in a commercial transaction, a prudent and sophisticated lender, having actual knowledge of an intervening lien, as well as the ability to avert resultant harm, would have ensured protection of its interests before extinguishing existing mortgage liens. Thus, we conclude that Norwest acted with culpability in failing to do so and is therefore not entitled to the protection of equitable subrogation.

*Id.* at 739.[2]

Liberty claims that it should be equitably subrogated to National City's priority in this case because (1) the mortgage recorded by National City gave an inadequate notice and description of the nature of the obligation it secured and was materially misleading, (2) it paid off the Morrises' debt to National City, (3) it was not guilty of culpable negligence, and (4) National City was guilty of culpable negligence by continuing to extend credit to the Morrises after Liberty had paid off their debt to National City.

In determining whether the mortgage recorded by National City sufficiently described the debt it secured, we are guided by *Plummer & Co., Inc. v. National Oil & Gas Inc.,* 642 N.E.2d 291, 292 (Ind.Ct.App. 1994), *trans. denied,* in which this court stated:

All mortgages must be secured by a debt. *Leader Publishing Co. v. Grant Trust & Savings Co.* (1910), 174 Ind. 192, 91 N.E. 498. The mortgage need not refer specifically to the amount of the indebtedness or the notes which evidence the debt. It only requires that the debt be described. *Commercial Bank v. Rockovits* (1986), Ind.App., 499 N.E.2d 765, 767, *trans. denied* (citing IND. CODE 32–1–2–15).

**2.** Although this case involves a prior, not intervening, lien, we believe that the court's reasoning in *Osterman* is applicable here.

The description of a debt in a mortgage does not have to be literally accurate but "must be correct so far as it goes, and full enough to direct attention to the sources of correct information in regard to it, and be such as not to mislead or deceive, as to the nature or amount of it, by the language used." *Pioneer Lumber & Supply Co. v. First–Merchants Nat'l Bank of Michigan City* (1976), 169 Ind.App. 406, 410, 349 N.E.2d 219, 222, *trans. denied* (citing *Bowen v. Ratcliff* (1895), 140 Ind. 393, 397, 39 N.E. 860, 862). A reasonably certain description of the debt is required so as to preclude the parties from substituting debts other than those described for the mere purpose of defrauding creditors. *Pioneer, supra,* 349 N.E.2d at 222 (citations omitted).

■ Applying the foregoing to the facts of this case, we conclude that the mortgage at issue sufficiently described the debt it was meant to secure and that it was not misleading with regard to such description. While it is true that the mortgage referred to a promissory note rather than an Equity Reserve Agreement, the description of the debt in the mortgage was reasonably certain and sufficient to direct attention to the source of correct information. In addition, the mortgage further stated that it shall also secure the payment of any other of the Morrises' liabilities to National City, when there is evidence of such liability and when such evidence states that the liability is secured thereby.

■ We also conclude that the doctrine of equitable subrogation is not available to Liberty in this case. Liberty, or at a minimum, its closing agent had actual knowledge of National City's prior-recorded mortgage lien and was notified that a signed statement from the Morrises was necessary to close the account which the mortgage secured. Liberty therefore had the ability to avert harm by simply procuring such a statement from the Morrises when it submitted payment to pay off the account. It failed to do so. Accordingly, Liberty acted with culpable negligence.[3] As a final matter, we note that National City was not itself culpably negligent by allowing the Morrises to obtain further advances on their account after receiving the payment from Liberty. As noted above, pursuant to the October 21, 1995 Equity Reserve Agreement, National City agreed to provide the Morrises an open-end line of credit for ten years. We further note that National City was not paid twice for the same indebtedness, was not unjustly enriched by Liberty's payment on the Morrises' equity line of credit, and did not receive a windfall. Rather, National City received only that to which it was entitled: the recognition that its lien should be paid before that of Liberty.

Judgment affirmed.

RILEY, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

I would reverse the summary judgment entered in favor of National City and would remand for further proceedings.

---

**3.** The dissent claims that Liberty did not have to inquire whether the Morrises had incurred any new obligations to National City. As we noted above, the mortgage stated that, in addition to the note referred to therein, it may also secure the repayment of additional liabilities. Liberty was therefore put on notice of the possibility of further indebtedness by the

Morrises to National City. Moreover, of even greater significance is that National City affirmatively notified the closing agent that a signed statement by the Morrises was necessary to close the account, and Liberty did nothing. Such inaction was more than mere inadvertence, mistake, or ignorance and constituted culpable negligence.

Although I agree that the trial court did not necessarily err in refusing to apply the doctrine of equitable subrogation, insofar as that determination rests upon a conclusion that Liberty's predecessor was guilty of "culpable negligence," I believe it to be in error.

The National City mortgage specifically stated that the debt secured was a promissory note in the amount of $35,000. In fact, the only debt then secured was the open line of credit for $35,000. Liberty had every right to rely upon National City's representation that the debt being paid by American Mortgage Co. was the only debt then in existence. That debt was paid by American except as to the de minimus amount of $99.26. This latter amount apparently represents accrued interest for the two day period between quotation of the pay-off figure and National City's receipt of the check from the title company. In my view, Liberty's predecessor was not obligated to inquire whether the Morrises had incurred new additional obligations to National City.

For this reason, I would remand for a determination of the factual as well as the equitable and legal effect of National City's representation as to the nature and amount of the debt secured by the mortgage and whether or not Liberty's predecessor was reasonable in its reliance upon that representation. Depending upon the resolution of these questions, a trier of fact might well find American/Liberty not culpably negligent.