**DREIBELBISS TITLE COMPANY, INC. d/b/a Commonwealth/Dreibelbiss Title Company, Appellant–Plaintiff,**

v.

**FIFTH THIRD BANK, as Successor in Interest to Civitas Bank, Appellee–Defendant.**

No. 49A02–0309–CV–823.

Court of Appeals of Indiana.

April 20, 2004.

Brian L. England, Hunt Suedhoff Kalamaros, Indianapolis, IN, Attorney for Appellant.

Douglas J. Hannoy, Bryan K. Redmond, Feiwell & Hannoy, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Dreibelbiss Title Company, Inc., d/b/a Commonwealth/Dreibelbiss Title Company ("Title Company"), appeals the trial court's grant of summary judgment to Fifth Third Bank, as successor in interest to Civitas Bank ("Fifth Third"), the trial court's denial of Title Company's cross-motion for summary judgment, and the trial court's denial of Title Company's motion to correct error. Title Company raises two issues, which we consolidate and restate as whether Fifth Third was required to release the mortgage after receiving payoff funds from Title Company accompanied by a letter signed by the mortgagor. We affirm.

The relevant facts designated by the parties follow. On April 10, 1998, Cynthia Blevins opened a home equity line of credit with Fifth Third's predecessor in interest [1] with a credit limit of $21,500.00. Blevins's obligations under the line of credit were secured by a mortgage on property on Rock Oak Drive in Indianapolis, Indiana. The line of credit agreement provided, in part, that:

> *EXPIRATION OF AGREEMENT.* Your Account shall expire on the 15th Anniversary of this Agreement unless sooner terminated because you default or you notify Bank, in writing, that you wish to terminate the Account and pay all sums due and owing hereunder together with official fees for recording the cancellations of the mortgage executed contemporaneously herewith. In the event this Account is terminated at your request or expires on the date set forth above, all sums due hereunder shall immediately be due and payable within 30 days.

Appellant's Appendix at 21.

On September 23, 1999, Fifth Third provided Title Company with a Home Equity Line of Credit Payoff form ("Payoff Form") regarding Blevins's property. The

---

1. Blevins actually opened the home equity line of credit with Citizens Bank of Central Indiana. However, on December 31, 1998, Citizens Bank of Central Indiana merged into Pinnacle Bank and was renamed Citizens Bank of MidAmerica. On April 22, 1999, Citizens Bank of MidAmerica was renamed Civitas Bank, and, on March 18, 2000, Civitas Bank was acquired by merger and renamed Fifth Third Bank. For the sake of simplicity, we will refer to the lender as Fifth Third throughout this opinion.

Payoff Form provided that the payoff amount was $21,779.10, which included the principal, interest, and a release fee. The payoff amount was good through October 20, 1999. The Payoff Form also noted: "Please have customer sign letter authorizing [Fifth Third] to close [her] Home Equity Account and release [her] mortgage." *Id.* at 5.

On October 15, 1999, Title Company sent Fifth Third a check in the amount of $21,779.10 and the memo portion of the check noted, "For: 2nd Mortgage Payoff." *Id.* at 6. With the check, Title Company sent a letter signed by Blevins entitled "INSUFFICIENT MORTGAGE PAYOFF/SELLER" that provided:

> I UNDERSTAND THAT IT IS NECESSARY TO SATISFY THE EXISTING MORTGAGE HELD BY *[Fifth Third]*, AND THAT THERE HAS BEEN A DEDUCTION FROM MY PROCEEDS IN THE SUM OF *$21,779.10.*
>
> IN THE EVENT THAT THE ABOVE SUM IS INSUFFICIENT TO SATISFY THE EXISTING MORTGAGE, WE WILL IMMEDIATELY FORWARD TO YOU ANY AND ALL ADDITIONAL SUMS AS MAY BE REQUIRED BY EXISTING MORTGAGEE TO ISSUE A DISCHARGE OR SATISFACTION OF SAID MORTGAGE.

*Id.* at 8. Fifth Third received the check and apparently paid off the line of credit but did not close the account or release the mortgage.

In 2000, Blevins took an advance of $20,000.00 from the line of credit with Fifth Third. On April 1, 2002, Title Company demanded that Fifth Third release the mortgage within fifteen days pursuant to Ind.Code § 32–8–1–1 and Ind.Code § 32–8–1–2 (repealed by Pub.L. No. 2–2002, § 128 (eff. July 1, 2002), *see now* Ind.Code § 32–28–1–1 (Supp.2003), 32–28– 1–2 (Supp.2003)). Fifth Third did not release the mortgage, and Title Company filed a complaint against Fifth Third to compel the release of the mortgage.

Fifth Third filed a motion for summary judgment, arguing that Blevins never specifically requested that Fifth Third close the line of credit account or release the mortgage. Title Company filed a cross-motion for summary judgment, arguing that Title Company and Blevins complied with Fifth Third's instructions and Fifth Third was put on notice that Blevins wished to terminate her account. Alternatively, Title Company argued that Fifth Third's instructions were ambiguous and should be construed against the drafter. The trial court granted Fifth Third's motion for summary judgment and denied Title Company's cross-motion for summary judgment. Title Company filed a motion to correct error, which the trial court also denied.

Our standard of review for the grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* Review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court. *Id.* at 974. Additionally, when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. *Burkett v. Am. Family*

*Ins. Group,* 737 N.E.2d 447, 452 (Ind.Ct. App.2000). The fact that the parties made cross-motions for summary judgment does not alter our standard of review. *Hartford Acc. & Indem. Co. v. Dana Corp.,* 690 N.E.2d 285, 291 (Ind.Ct.App.1997), *trans. denied.* Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

■ The issue is whether Fifth Third was required to release the mortgage after receiving payoff funds from Title Company accompanied by a letter signed by the mortgagor. Ind.Code § 32–28–1–1(b) (formerly Ind.Code § 32–8–1–1) provides that "[w]hen the debt or obligation and the interest on the debt or obligation that the mortgage ... secures has been fully paid, lawfully tendered, and discharged, the owner, holder, or custodian shall: (1) release; (2) discharge; and (3) satisfy of record; the mortgage...." It is undisputed that Title Company and Blevins fully paid and lawfully tendered the funds owed to Fifth Third. The question here is whether Title Company and Blevins "discharged" the obligation such that Fifth Third had an obligation to release, discharge, and satisfy the mortgage of record. Title Company argues that it properly requested Fifth Third to close Blevins's account and release the mortgage and that Fifth Third erroneously failed to do so. Fifth Third argues that Title Company and Blevins failed to properly request that Fifth Third close Blevins's account and release the mortgage.

Fifth Third argues that *Liberty Mortgage Corp., Inc. v. Nat'l City Bank,* 755 N.E.2d 639 (Ind.Ct.App.2001), *trans. denied,* is instructive. There, homeowners had an equity line of credit and a mortgage with National City. *Id.* at 639–640. They later borrowed money from Liberty and secured the loan with a mortgage on

their property. *Id.* at 640. As part of the closing on the new mortgage, the title company requested a payoff amount for the line of credit from National City. *Id.* at 640. National City provided the information on a form that stated: "A signed statement from the customer requesting the account to be closed is also required." *Id.* Although the title company sent a check to National City paying off the line of credit, the title company did not send a signed statement from the homeowners requesting that the line of credit account be closed. *Id.* at 640–641. National City later brought an action against Liberty and the homeowners, and the trial court granted summary judgment to National City. *Id.* at 641.

On appeal, we held, in part, that:

Liberty, or at a minimum, its closing agent had actual knowledge of National City's prior-recorded mortgage lien and was notified that a signed statement from the [homeowners] was necessary to close the account which the mortgage secured. Liberty therefore had the ability to avert harm by simply procuring such a statement from the [homeowners] when it submitted payment to pay off the account. It failed to do so. Accordingly, Liberty acted with culpable negligence. As a final matter, we note that National City was not itself culpably negligent by allowing the [homeowners] to obtain further advances on their account after receiving the payment from Liberty. As noted above, pursuant to the October 21, 1995 Equity Reserve Agreement, National City agreed to provide the [homeowners] an open-end line of credit for ten years. We further note that National City was not paid twice for the same indebtedness, was not unjustly enriched by Liberty's payment on the [homeowners'] equity line of credit, and did not receive a windfall. Rather, Na-

tional City received only that to which it was entitled: the recognition that its lien should be paid before that of Liberty.

*Id.* at 643 (footnote omitted).

Similarly, here, the line of credit agreement provided that the account would expire when Blevins "notif[ied] Bank, in writing, that [she] wish[ed] to terminate the Account and pay all sums due and owing hereunder together with official fees for recording the cancellations of the mortgage executed contemporaneously herewith." Appellant's Appendix at 21. In addition, the Payoff Form also noted: "Please have customer sign letter authorizing [Fifth Third] to close [her] Home Equity Account and release [her] mortgage." *Id.* at 5. Both the line of credit agreement and the Payoff Form clearly required that Blevins notify Fifth Third in writing that she wished her account to be closed. The line of credit agreement also required the payment of amounts due under the account plus fees for recording the cancellation of the mortgage, while the Payoff Form also required that Blevins authorize Fifth Third in writing to release the mortgage.

 Title Company argues that these documents were inconsistent, ambiguous, and should be construed against Fifth Third as the drafter of the documents. An agreement is "not ambiguous merely because the parties espouse differing interpretations of the terms." *Stout v. Kokomo Manor Apartments*, 677 N.E.2d 1060, 1064 (Ind.Ct.App.1997). Rather, an agreement "is ambiguous only if reasonable people reading the contract would differ as to the meaning of the terms." *Id.* While both the line of credit agreement and the Payoff Form placed different requirements upon Blevins, one requirement is clear and unambiguous in both documents, Blevins was required to submit a written request to close the line of credit account.

When Title Company submitted the check to Fifth Third for the payoff amount, it also submitted a letter signed by Blevins entitled "INSUFFICIENT MORTGAGE PAYOFF/SELLER" that provided:

I UNDERSTAND THAT IT IS NECESSARY TO SATISFY THE EXISTING MORTGAGE HELD BY *[Fifth Third]*, AND THAT THERE HAS BEEN A DEDUCTION FROM MY PROCEEDS IN THE SUM OF *$21,779.10.*

IN THE EVENT THAT THE ABOVE SUM IS INSUFFICIENT TO SATISFY THE EXISTING MORTGAGE, WE WILL IMMEDIATELY FORWARD TO YOU ANY AND ALL ADDITIONAL SUMS AS MAY BE REQUIRED BY EXISTING MORTGAGEE TO ISSUE A DISCHARGE OR SATISFACTION OF SAID MORTGAGE.

Appellant's Appendix at 8. Although this letter sufficiently informs Fifth Third that Blevins is submitting funds to satisfy the existing mortgage and informs Fifth Third that she will forward additional sums necessary to issue a discharge or satisfaction of the mortgage, the letter does not mention closing the line of credit account. The mortgage is an integral part of the line of credit agreement, and the release of the mortgage without closing the account would defeat Fifth Third's security for the line of credit. We conclude that Title Company and Blevins failed to meet Fifth Third's condition for release of the mortgage; specifically, Blevins did not direct Fifth Third in writing to close the account. As in *Liberty*, Title Company "had the ability to avert harm by simply procuring such a statement from [Blevins] when it submitted payment to pay off the account. It failed to do so." *Liberty*, 755 N.E.2d at 643. Consequently, Fifth Third was not obligated to release the mortgage. We

conclude that there are no genuine issues of material fact and Fifth Third was entitled to summary judgment as a matter of law. Thus, the trial court did not err by granting Fifth Third's motion for summary judgment and denying Title Company's motion for summary judgment. *See, e.g., id.*

For the foregoing reasons, we affirm the trial court's grant of summary judgment to Fifth Third, the trial court's denial of Title Company's motion for summary judgment, and the trial court's denial of Title Company's motion to correct error.

Affirmed.

MATHIAS and VAIDIK, JJ., concur.