**DREIBELBISS TITLE COMPANY, INC., Appellant–Defendant,**

v.

**MOREQUITY, INC., Appellee–Plaintiff.**

No. 49A04–0602–CV–93.

Court of Appeals of Indiana.

Feb. 27, 2007.

Dane L. Tubergen, Fort Wayne, IN, Attorney for Appellant.

Gary P. Price, Todd A. Richardson, Lewis & Kappes Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Dreibelbiss Title Company ("Dreibelbiss") appeals a judgment against it for breach of a title insurance policy it issued to MorEquity ("Lender"), a mortgage lender. The trial court properly found Dreibelbiss failed to insure that Lender's mortgage would be a first lien on the real estate that secured the mortgage, and the damages the court awarded were supported by the evidence. We accordingly affirm.

## FACTS

This case was submitted to the trial court on stipulated facts. In November 1998, Lender loaned Robert and Karen Young $133,450 and took as security a mortgage on the Youngs' home. Dreibelbiss issued to Lender a title insurance policy that provided, among other things, no other lien had priority over the Youngs' mortgage with Lender.

When Lender made the loan to the Youngs, KeyBank ("Bank") held two mortgages on their property. One was a mortgage for a fixed sum and the other was a home equity line of credit securing amounts the Youngs could borrow from time to time.

The Dreibelbiss agent who handled the loan closing contacted the Bank for instructions about paying off the existing mortgages and to determine the payoff amounts. The Bank sent written instructions that provided it required, along with the payoff, "Written authorization from the customer to close the loan and release the lien." (App. at 33.)

Those instructions specified the payoff was valid through October 15, 1998, but the Lender's loan did not close until November 20. On November 12, the Bank sent a "memorandum," (id. at 62–63), regarding each loan. Each memorandum indicated a revised payoff amount and stated "Please forward the payoff to my attention, along with a letter advising Key to release our lien, I will then forward to paid loans for processing." (Id.)

After the loan closed Dreibelbiss's agent sent the payoff amount for each loan to the Bank with a letter asking the Bank to "process the payoffs and issue your release of mortgages." (Id. at 63.) Dreibelbiss also sent Lender a "CONFIRMATION OF LOAN TRANSACTION" that confirmed the mortgage had been recorded and stated Dreibelbiss agreed "to deliver to lender forthwith" a title insurance policy that "shall insure that the mortgage is a first lien...." (Id. at 66.) However, Dreibelbiss's agent did not provide written authorization from the Youngs to release the home equity lien.[1] The Bank did not re-

---

1. The trial court so found, and neither party

challenges that finding on appeal. Whether

lease that mortgage. The Youngs subsequently drew money on the Bank's line of credit and defaulted.

In March 2000, the Bank foreclosed on the Young's property, taking the position it continued to hold a first priority lien to which Lender's lien was subordinate. Lender received a copy of the foreclosure complaint listing it as a subordinate lienholder. Lender answered, saying it did not dispute the Bank's allegation its lien was superior to that of Lender. Dreibelbiss was not notified of the foreclosure action.

The Bank obtained a default judgment and Lender's counsel executed a "Consent to Judgment," (id. at 34), in which Lender again stated it agreed the Bank's mortgage was superior to that held by Lender. Dreibelbiss was not informed of the Consent to Judgment or of the foreclosure. About five months after the default judgment and foreclosure, Lender's counsel informed Dreibelbiss there had been a foreclosure and Lender had consented to it. The Youngs' property was sold at a sheriff's sale and the proceeds were insufficient to satisfy any part of Lender's mortgage.[2] Lender's petition to set aside the default judgment and foreclosure was denied, and we affirmed. *Morequity, Inc. v. Keybank, N.A.*, 773 N.E.2d 308 (Ind.Ct.App.2002), *trans. denied* 783 N.E.2d 703 (Ind.2002). Lender then sued Dreibelbiss for declaratory relief and damages for breach of the title insurance policy. After a bench trial, the court found for Lender.

## DISCUSSION AND DECISION

■ Where a decision is based entirely on stipulation by the parties, this court is in as good a position as the trial court to determine its force and effect. *Soc'y for Prevention of Cruelty to Animals & Humane Soc'y of Delaware County, Inc. v. City of Muncie ex rel. Scroggins*, 769 N.E.2d 669, 673 (Ind.Ct.App.2002). Thus, our review is *de novo. Id.*

### 1. *Breach*

Dreibelbiss argues judgment for Lender was improper because Lender did not give Dreibelbiss reasonably prompt notice a claim was being made against Lender's lien. Therefore, Dreibelbiss says, it was deprived of any opportunity to defend the lien priority, to participate in the litigation of the claim, to take any steps to remove the competing lien, or to negotiate a settlement.

The Dreibelbiss policy does require prompt notice by the insured of a claim of which the insured becomes aware: "If prompt notice shall not be given to [Dreibelbiss], then as to the insured all liability of [Dreibelbiss] shall terminate...." (App. at 51.) Our Supreme Court has recognized the duties to notify and to cooperate are conditions precedent to an insurance company's liability to its insured. *Miller v. Dilts*, 463 N.E.2d 257, 260–61 (Ind.1984). "Where prejudice is created by the insured's noncompliance with the policy's provisions, the insurance company is relieved of its liability under the policy." *Id.* at 261.

■ However, we agree with the trial court that Dreibelbiss's own failure to follow the Bank's payoff instructions[3]

---

Dreibelbiss provided written authorization from the Youngs is not explicitly addressed in the stipulated facts or in the Statement of Facts in either party's appellate brief.

2. Lender lost its principal amount of $131,552.99. The Dreibelbiss policy limit was $134,500.

3. Dreibelbiss asserts, without explanation, that the breach to which the court was refer-

amounted to "a first material breach of [Dreibelbiss's] obligations to [Lender], thus relieving [Lender] of its obligations under the insurance policy to give 'notice' to Dreibelbiss and allow it to defend its interests in the foreclosure action." (App. at 11.) *See, e.g., Sallee v. Mason*, 714 N.E.2d 757, 763 (Ind.Ct.App.1999) (because accountant committed first material breach of his employee's employment contract, former employee was not required to abide by a noncompete agreement included therein), *trans. denied* 735 N.E.2d 223 (Ind.2000).

The case before us is therefore controlled by *Liberty Mortgage Corp., Inc. v. Nat'l City Bank*, 755 N.E.2d 639 (Ind.Ct. App.2001), *trans. denied* 774 N.E.2d 507 (Ind.2002). Homeowners had an equity line of credit and a mortgage with National City. They later borrowed money from Liberty and secured the loan with a mortgage on their property. As part of the closing on the new mortgage, the title company requested a payoff amount for the line of credit from National City, and National City provided the information on a form that stated: "A signed statement from the customer requesting the account to be closed is also required." 755 N.E.2d at 640. The title company, like Dreibelbiss in the case before us, sent a check to National City paying off the line of credit, but it did not send a signed statement from the homeowners asking the line of credit account be closed. National City later brought an action against Liberty

and the homeowners, and the trial court granted summary judgment to National City. *Id.* at 641.

On appeal Liberty argued, among other things, that it should be "equitably subrogated to National City's mortgage priority." *Id.* We affirmed, noting Liberty or its agent knew of National City's prior-recorded mortgage lien and was notified that a signed statement from the homeowners was necessary to close the account that the mortgage secured. "Liberty therefore had the ability to avert harm by simply procuring such a statement from the [homeowners] when it submitted payment to pay off the account." *Id.* at 643. Its failure to do so, we held, was "culpable negligence." *Id.*

In *Dreibelbiss Title Co., Inc. v. Fifth Third Bank*, 806 N.E.2d 345 (Ind.Ct.App. 2004), *trans. denied* 822 N.E.2d 978 (Ind. 2004), we addressed whether Fifth Third was required to release a mortgage after receiving payoff funds from the title company accompanied by a letter signed by the mortgagor. There, as in the case before us, Dreibelbiss was told to have the mortgagor sign a letter authorizing the bank to close the home equity account and release the mortgage. "Both the line of credit agreement and the Payoff Form clearly required that [mortgagor] notify Fifth Third in writing that she wished her account to be closed." *Id.* at 349. The letter did not explicitly request the account be closed.

---

ring was of Dreibelbiss's "obligation to deliver a title insurance policy," (Br. of Appellant at 14), and it notes Dreibelbiss fulfilled that obligation.

It is apparent from the context of that conclusion that the trial court was instead referring to Dreibelbiss's failure to follow the payoff instructions. *E.g.,* Dreibelbiss "was obligated to ... obtain and file a security interest on behalf of [Lender] of acceptable priority to the FHA" (App. at 10) and to

"insure that [Lender] had a first lien on the Young's [sic] residence to provide security for the lien." *(Id.)* The court further concluded "Dreibelbiss was provided with specific instructions on the method to accomplish (a) and (b), above. It did not follow those instructions, and, as a result, [the Bank] retained a first priority interest...." *(Id.)* We decline Dreibelbiss's invitation to disregard the context and plain language of the trial court's conclusions.

There Dreibelbiss argued the documents were inconsistent, ambiguous, and should be construed against Fifth Third as the drafter. We noted the line of credit agreement and the payoff form placed different requirements on the borrower, "but one requirement is clear and unambiguous in both documents, [the borrower] was required to submit a written request to close the line of credit account." *Id.* We affirmed summary judgment for Fifth Third.

We accordingly cannot say the trial court erred in concluding Lender was not obliged to more promptly notify Dreibelbiss of the foreclosure.

## 2. *Damages*

We will affirm a damage award if it is within the scope of the evidence before the trial court. If the record supports the award of damages, the determination of damages is within the sound discretion of the trial court. *Brant Const. Co., Inc. v. Lumen Const. Co.*, 515 N.E.2d 868, 872 (Ind.Ct.App.1987), *reh'g denied, trans. denied.* The parties stipulated that at the time of foreclosure Lender held a lien in the amount of $131,552.99 and after the Bank's lien was satisfied there was nothing left to pay any part of Lender's lien. The trial court awarded damages in the amount of Lender's unsatisfied lien, concluding "[b]ut for the promises made by Dreibelbiss ... [Lender] would not have funded the Youngs' refinancing." (App. at 11.)

Dreibelbiss argues the trial court erred in awarding damages to Lender for losses that "clearly are not covered by the policy." (Br. of Appellant at 16.) We cannot say the amount of damages the court awarded was erroneous. Dreibelbiss re-

lies on policy language that its liability "shall not exceed the least of ... the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy." (App. at 52.) This difference, it asserts, can be no more than the amount of the Bank's lien.

We do not believe the trial court was so limited. An insurance agent or broker who undertakes to procure insurance for another is an agent of the proposed insured, and thus owes his principal a duty to exercise reasonable care, skill and diligence in effecting the insurance. *Bulla v. Donahue*, 174 Ind.App. 123, 126, 366 N.E.2d 233, 236 (1977).[4] Thus, if an agent undertakes to procure insurance and through his fault and neglect fails to do so, he is liable to his principal for any damage resulting therefrom. *Id.* The action against the agent may be for breach of contract or for negligent default in the performance of a duty imposed by contract. *Id.*

At the time of the foreclosure the Lender held a lien for $131,552.99, and after the Bank's lien was satisfied there was nothing left to satisfy any part of the Lender's lien. We cannot say the trial court erred in finding the Lender was damaged in that amount.[5] We accordingly affirm.

Affirmed.

RILEY, J., and BAILEY, J., concur.

---

**4.** In *Bulla*, an insurance agent did not apply for coverage the client paid for. Dreibelbiss, unlike the agent in *Bulla*, issued a policy. However Dreibelbiss's failure to follow the explicit directions for the payoff of the Bank's

loans effectively left Lender in the same position as if no policy had been issued.

**5.** The trial court noted the damage award was less than the policy limits, but did not explicit-

ly state the award was determined pursuant to any policy provision. We have held "policy limits restrict the amount the insurer may have to pay in the *performance* of the contract, not the damages that are recoverable for its breach." *Ind. Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1090 (Ind.Ct.App.1992) (emphasis supplied).