GREEN TREE SERVICING, LLC, f/k/a
Conseco Finance Servicing Corp.,
Plaintiff–Appellant,

v.

U.S. BANK NATIONAL ASSOCIATION,
N.D. and United Investors Corporation,
Defendants–Appellees.

No. 06CA0881.

Colorado Court of Appeals,
Div. IV.

July 26, 2007.

Hopp & Shore, LLC, Larry G. Johnson, Englewood, Colorado, for Plaintiff–Appellant.

Messner & Reeves, LLC, James R. Everson, Denver, Colorado, for Defendant–Appellee U.S. Bank National Association, N.D.

Bloom Murr & Accomazzo, P.C., Joseph A. Murr, Daniel R. Delaney, Denver, Colorado, for Defendant–Appellee United Investors Corporation.

Opinion by Judge GRAHAM.

Plaintiff, Green Tree Servicing, LLC, formerly known as Conseco Finance Servicing Corp., appeals the trial court's judgment in favor of defendants, U.S. Bank National Association, N.D. and United Investors Corporation. The court declined to void a deed of trust in favor of U.S. Bank or to set aside the public trustee's foreclosure sale, under the equitable remedy of equitable subrogation. We affirm.

The following findings of fact of the trial court are undisputed. Sandra Moore purchased a home in Denver, Colorado and secured a note for $115,000 with a first deed of trust in favor of Chase Manhattan Mortgage.

In May 2000, Moore opened a home equity line of credit from U.S. Bank with a credit limit of $34,000. The home equity line of credit was secured by a second deed of trust. Moore borrowed against all, or nearly all, the credit available to her on the equity line of credit.

In the summer of 2001, Moore sought refinancing in the amount of $185,000 through Conseco. She intended to pay off the first and second encumbrances with the loan from Conseco.

On August 2, 2001, Conseco received a title commitment from Chicago Title, which required releases of the Chase deed of trust and the U.S. Bank deed of trust. The title commitment stated: "The [U.S. Bank] deed of trust appears to secure a credit line/revolving credit account. The borrower will be required to close this account at closing to enable the lender to release the deed of trust."

On September 5, Conseco closed on the refinancing loan. It paid off the Chase deed of trust, which was ultimately released. Conseco also disbursed $34,642.24 to U.S. Bank, which was the full amount then due on the line of credit. Conseco had not requested a written payoff statement from U.S. Bank, but had an oral confirmation of the balance. The check received by U.S. Bank was credited to Moore's account, but was not accompanied by any cover letter or instructions to close the account.

On or about September 24, U.S. Bank sent a facsimile form to Conseco inquiring whether Moore's line of credit should remain open

or be closed and the collateral released. Conseco did not respond. Another request was resent via facsimile on October 9, and again Conseco did not respond. Also, Moore had given U.S. Bank no instructions regarding the account.

Had Moore requested that her account be closed, U.S. Bank would have been obliged to close her line of credit and release its deed of trust. If Conseco had requested that U.S. Bank close the account and release the deed of trust, U.S. Bank would have frozen the account, not allowed any further advances, and sought further instructions from Moore.

The Conseco deed of trust securing its $185,000 loan was recorded on October 12.

Meanwhile, from October 2 until December 18, 2001, Moore requested and received six advances on the line of credit, totaling over $28,000, which amount was still secured by the U.S. Bank deed of trust.

The ninety-day period for U.S. Bank to release the deed of trust, if the absolute and contingent indebtedness had been satisfied, expired on December 20, 2001. *See* § 38–35–124, C.R.S.2006. U.S. Bank did not release its deed of trust.

In June 2002, Conseco received the title insurance policy from Chicago Title, which again stated that the U.S. Bank deed of trust appeared to secure a line of credit and that instructions from the borrower were needed to close the line of credit to enable U.S. Bank to release the deed of trust. Conseco took no action.

During the remainder of 2002 through 2003, Moore continued to receive advances from the U.S. Bank line of credit.

By June 2004, Moore had defaulted on both the U.S. Bank line of credit and the Conseco loan. On June 14, 2004, U.S. Bank began foreclosure proceedings by filing a notice of election and demand with the public trustee. Conseco was included on the mailing list provided to the public trustee.

On July 11, Green Tree, which ultimately purchased the loan from Conseco, received notice of the U.S. Bank foreclosure. Green Tree took no action to stop the foreclosure or cause the U.S. Bank deed of trust to be released. At the foreclosure sale, United Investors, another creditor of Moore, redeemed the position of U.S. Bank, thus eliminating the junior position of Green Tree. Although Green Tree had an opportunity to bid at the foreclosure sale, it did not do so.

Instead, Green Tree filed a complaint to quiet title, void the U.S. Bank deed of trust, and set aside the public trustee's foreclosure sale, or, in the alternative, to equitably subordinate U.S. Bank's deed of trust to Green Tree's deed of trust. Specifically, Green Tree sought to set aside U.S. Bank's deed of trust pursuant to § 38–35–124. It did not seek damages directly against U.S. Bank for violation of the statute.

After a trial to the court, the court noted that § 38–35–124 required U.S. Bank to release its deed of trust within ninety days after Conseco paid off the full amount of U.S. Bank's loan to Moore. However, the court concluded: "[T]he sole remedy stated in the statute is that … the debtor or any other person liable on the debt, can recover all economic loss plus attorney's fees if the statute isn't complied with.… The statute does not state any unreleased lien is void or becomes a nullity retroactively." The trial court noted that Green Tree could have claimed damages from U.S. Bank for violation of § 38–35–124, but had not made that claim in its complaint.

The trial court also rejected Green Tree's request for equitable subrogation, finding that Green Tree's actual knowledge of the U.S. Bank deed of trust and its negligence precluded relief:

> Here in terms of actual knowledge there is no question that Green Tree had actual knowledge of the U.S. Bank deed of trust. It had that knowledge … before it made its refinancing transaction by virtue of the title commitment. And [Green Tree] was repeatedly reminded of that clear through the foreclosure of the U.S. Bank deed of trust. And during all that time despite that knowledge [,] Green Tree took no steps to either correct the problem before there was a default or stop the sale before the sale was completed and the public trustee's deed was issued.

Second in terms of negligence there are repeated instances of Green Tree's negligence creating its own problems. First, when it closed its refinancing, it didn't take the extraordinarily simple step of having Ms. Moore sign a request addressed to U.S. Bank to release the deed of trust and close the line of credit. Then even after being asked by U.S.—well, it also didn't send U.S. Bank any instructions with its check. It simply sent the check with no cover letter. Then when U.S. Bank asked for instructions, asked what Conseco's intent was, twice, Conseco didn't respond. It again didn't respond when it received the title policy, which contained a reminder that the U.S. Bank deed of trust was in first position.

Then when the trouble started in 2004, Green Tree didn't react to ... receiving notice of the U.S. Bank foreclosure even though [a Green Tree employee] recognized that this was a problem and that they were in danger of being wiped out, no action was taken until Green Tree started its own foreclosure and its attorney in Colorado recognized that this was a real problem. And finally, the final opportunity Green Tree had to at least minimize its losses was to exercise its right of redemption, pay off the U.S. Bank deed of trust and at least get the benefit of what ever other equity is in the property and it didn't take that step. So I find and conclude that there are numerous instances where Green Tree acted negligently and its negligence created the situation from which it now seeks relief and equity.

Finally, the third of those additional factors is the degree of sophistication. Equitable subrogation is often applied to give relief to an unsophisticated homeowner who maybe got bad information or was relying on verbal assurances from a lender, something like that. Here there is no question that Green Tree is a sophisticated, large commercial lender and knows or is charged with knowledge of how these transactions work. Therefore, for those reasons I decline to exercise whatever equitable [subrogation] ... that [Green Tree] seeks.

The trial court dismissed Green Tree's complaint with prejudice, and this appeal followed.

## I.

When, as here, the operative facts are undisputed and the issue is one of law, we review de novo. *Ceja v. Lemire*, 143 P.3d 1093, 1095 (Colo.App.2006), *aff'd*, 154 P.3d 1064 (Colo.2007).

## II.

■ Green Tree contends that the trial court erred in not voiding the U.S. Bank deed of trust and setting aside the public trustee's foreclosure sale and deed to United Investors. Specifically, Green Tree argues that § 38–35–124, as applied in *Crown Bank v. Crowder Mortgage Corp.*, 5 P.3d 954 (Colo. App.2000), provides for such a remedy. We disagree.

In construing a statute, we are guided by familiar principles of statutory construction. Our primary mission is to give effect to the intent of the legislature. To determine legislative intent, we first look to the plain language of the statute. If the statutory terms are clear and unambiguous, our inquiry is complete, and there is no need to employ interpretive rules of statutory construction. *State Dep't of Highways v. Mountain States Tel. & Tel. Co.*, 869 P.2d 1289, 1290 (Colo. 1994).

Section 38–35–124 states:

Except as provided in articles 22 and 23 of this title, when all indebtedness, whether absolute or contingent, secured by a lien on real property has been satisfied, unless the debtor requests in writing that the lien not be released, the creditor or holder of the indebtedness shall, within ninety days after the satisfaction of the indebtedness and receipt from the debtor of the reasonable costs of procuring and recording the release documents, record with the appropriate clerk and recorder the documents necessary to release or satisfy the lien of record or, in the case of an indebtedness secured by a deed of trust to a public trustee, file with the public trustee the documents required for a release as pre-

scribed by section 38–39–102. If the debtor requests in writing that the lien be released, or fails to request in writing that the lien not be released, then the debtor's request or the actual release shall cancel any obligations on the part of the creditor or holder to make any further loan or advance that would be secured by the lien.... *Any creditor or holder who fails to comply with this section shall be liable to the owner of the real property encumbered by such indebtedness and to any other person liable on such indebtedness for all actual economic loss incurred enforcing the rights provided under this section, including reasonable attorney fees and costs.*

(Emphasis added.)

Similarly, § 38–35–124.5, C.R.S.2006, provides as relevant here:

(1) Any person or entity providing closing and settlement services for a real estate transaction and to whom a payoff statement is addressed shall be entitled to reasonably rely on the amounts that are set forth in such payoff statement for the time frame set forth therein and shall not be liable to the creditor or holder of the indebtedness or its agent for any omitted amounts, unless a written amendment is received by such person or entity prior to the closing of the transaction. Upon payment to the creditor or holder of the amounts stated in the written payoff statement, as may be amended, such creditor or holder shall be required to comply with the release provisions of section 38–35–124.

(2) Any creditor or holder of the indebtedness who fails to comply with the release provisions of section 38–35–124 as required by subsection (1) of this section *shall be liable to those persons or entities to whom the written payoff statement was addressed for any actual economic loss suffered by such persons or entities, including reasonable attorney fees and costs in enforcing the provisions of this section.*

(Emphasis added.)

Assuming, without deciding, that the failure of U.S. Bank to release its deed of trust constituted a violation of § 38–35–124 or § 38–35–124.5, there is nothing in either stat-ute stating that in the event of a violation of their terms the deed of trust is null and void or that the foreclosure of real property subject to the deed of trust must be set aside. Rather, §§ 38–35–124 and 38–35–124.5 clearly and unequivocally provide that Green Tree may bring an action for damages, including reasonable attorney fees and costs, against U.S. Bank, as a creditor who failed to comply with the release provisions. An action for damages is the sole remedy under §§ 38–35–124 and 38–35–124.5. However, Green Tree did not assert a claim of damages against U.S. Bank for violation of the statute, and, therefore, that issue is not before us here.

■ We cannot assume the General Assembly intended to include provisions that it explicitly did not. If the General Assembly has not authorized a particular remedy in a statute, we cannot furnish one. *See State Dep't of Highways v. Mountain States Tel. & Tel. Co., supra,* 869 P.2d at 1291–92; *Silverview at Overlook, LLC v. Overlook at Mt. Crested Butte Ltd. Liab. Co.,* 97 P.3d 252, 257 (Colo.App.2004); *Bd. of County Comm'rs v. HAD Enters., Inc.,* 35 Colo.App. 162, 164, 533 P.2d 45, 46 (1974). Thus, the remedies sought by Green Tree, namely, voiding U.S. Bank's deed of trust and setting aside the foreclosure, are not authorized by either § 38–35–124 or § 38–35–124.5.

■ We also note that the remedy in § 38–35–124.5 is triggered only when there has been a request for, and receipt of, a written payoff statement. Here, Green Tree never requested or received a written payoff statement. Thus, Green Tree cannot claim damages under that statute.

Indeed, § 38–38–501, C.R.S.2006, bars the remedy Green Tree seeks here. Section 38–38–501 provides in relevant part:

Upon the expiration of the period of redemption allowed to the owner and to all subsequent lienors entitled to redeem, title to the property sold shall vest in the holder of the certificate of purchase or the holder of the certificate of redemption issued to the lienor last redeeming in case a redemption has been made by a lienor. Subject to the provisions of sections 38–38–506 and 38–41–212(2), such title shall be

free and clear of all liens and encumbrances junior to the lien foreclosed.

Therefore, when the redemption period expired and the public trustee's deed had issued, all junior liens, including Green Tree's deed of trust, were extinguished as a matter of law. Accordingly, when Green Tree filed this action seeking to enforce its lien, it had no lien to enforce.

We reject Green Tree's contention that *Crown Bank* compels a different result. In *Crown Bank*, upon request from the owner of certain property for a payoff statement, Crown Bank (the holder of a first deed of trust encumbering the property) responded by letter with a figure of approximately $121,300, which included $1,800 in attorney fees. The letter stated that if the attorney fees and an additional charge of $5,200 were contested, Crown Bank would not execute a request for release of the deed of trust without payment of an escrow deposit of an additional $7,000 to secure the bank against attorney fees and costs it might incur in any future dispute with the property owner over the original amount of fees included in the payoff and the additional charge. When the funds were tendered, the owner objected to the amount of principal, interest, and fees included in the payoff figure. Crown Bank returned the tendered payoff check and filed an action for judicial foreclosure of its unreleased deed of trust. The district court ordered Crown Bank to release the deed of trust upon receipt of a replacement check in the original payoff amount, excluding the additional charge. In affirming the district court, a division of this court concluded that § 3835124 requires a lender to release its deed of trust upon tender of a payment fully satisfying the secured obligation:

> [A] lender cannot place conditions on its release of a deed of trust other than the satisfaction of the indebtedness secured by that deed of trust. This conclusion is consistent with the apparent purpose of the statute, which is to permit the owners of real property to obtain the release of liens by the payment of the full amount secured by the lien and thereby permit the owner to sell, pledge, or otherwise deal with the property free of the lien. If a lien holder were permitted further to condition the release of the lien, it could use that ability to coerce settlement of other disputes or accounts[,] a result which the statute clearly intended to prevent.

*Crown Bank v. Crowder Mortgage Corp., supra,* 5 P.3d at 956.

Here, unlike the situation in *Crown Bank,* Green Tree waited until the redemption period had expired and the public trustee's deed had issued before it sought a court order requiring U.S. Bank to release its deed of trust pursuant to § 38–35–124 or § 38–35–124.5. Moreover, *Crown Bank* does not address whether § 38–35–124 or § 38–35–124.5 authorizes the remedy Green Tree seeks here, namely, voiding a deed of trust after the completion of a foreclosure sale. Therefore, we conclude that *Crown Bank* is inapposite.

## III.

■ Green Tree also asserts that the trial court erred in concluding that principles of equity barred its claim for equitable subrogation. We are not persuaded.

■ Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 833 (Colo.2004) (quoting *Behlen Mfg. Co. v. First Nat'l Bank,* 28 Colo.App. 300, 309, 472 P.2d 703, 707 (1970)). Subrogation is an equitable principle that allows "a party secondarily liable who has paid the debt of the party who is primarily liable [to] institute a recovery action in order to be made whole." *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co., supra,* 90 P.3d at 833 (quoting *Mid–Century Ins. Co. v. Travelers Indem. Co.,* 982 P.2d 310, 315 (Colo.1999)). Thus, in the context of mortgages, equitable subrogation permits the substitution of a later lienholder into the lien-priority status of a prior lienholder. *Hicks v. Londre,* 125 P.3d 452, 456 (Colo.2005). "The doctrine allows a later-filed lienholder to leapfrog over an intervening lien and take a priority position." *Hicks v. Londre, supra,* 125 P.3d at 456.

██ Five factors are conditions precedent to the application of equitable subrogation: (1) the subrogee made the payment to protect his or her own interest; (2) the subrogee did not act as a volunteer; (3) the subrogee was not primarily liable for the debt paid; (4) the subrogee paid off the entire encumbrance; and (5) subrogation would not work any injustice to the rights of the junior lienholder. *Hicks v. Londre, supra,* 125 P.3d at 456.

These five factors are, however, "invoked only within the overall context of equity and the specific facts of each case." *Hicks v. Londre, supra,* 125 P.3d at 457. Thus, even if these elements are satisfied, the court then considers whether the party seeking subrogation acted with knowledge, negligence, or a degree of sophistication such that application of the doctrine would be inequitable. *Hicks v. Londre, supra,* 125 P.3d at 457–58.

██ The failure of a lienholder to present evidence of wrongdoing by another lienholder does not preclude its claim for equitable subrogation. *Ameriquest Mortgage Co. v. Land Title Ins. Corp.,* —— P.3d ——, 2007 WL 2128203 (Colo.App.2007).

Even assuming that all five factors were satisfied here, we agree with the trial court that equity does not require that Green Tree be allowed to step into a position superior to U.S. Bank's lien.

First, Green Tree is a sophisticated, large commercial lender. Second, Green Tree had actual knowledge of U.S. Bank's prior-recorded deed of trust and was notified numerous times that Moore was required to close the account to enable U.S. Bank to release the deed of trust. Green Tree therefore had the ability to avert harm by simply procuring action from Moore either before or when it submitted payment to pay off the U.S. Bank deed of trust. It failed to do so. At no time did Green Tree request or instruct U.S. Bank to close or release its line of credit. Nor did it seek a ruling by the court requiring U.S. Bank to release its deed of trust. Furthermore, Green Tree failed to protect its own interests despite its knowledge of the U.S. Bank foreclosure. Specifically, it did nothing to stop the foreclosure proceeding, and, when the foreclosure sale was complete, it failed to exercise its redemption rights. Accordingly, Green Tree acted negligently. *See Dreibelbiss Title Co. v. Fifth Third Bank,* 806 N.E.2d 345, 349 (Ind.Ct.App.2004); *Liberty Mortgage Corp. v. Nat'l City Bank,* 755 N.E.2d 639, 643 (Ind.Ct.App.2001).

Thus, the trial court did not err in concluding that principles of equity barred Green Tree's claim for equitable subrogation.

The judgment is affirmed.

Judge HAWTHORNE and Judge CRISWELL *, concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.